```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                 DIVISION OF ST. THOMAS AND ST. JOHN
```

MONIFA MARRERO,                          )
                                         )
         Plaintiff,                      )
                                         )
    v.                                   )   Civil No. 2008-92
                                         )
UNITED INDUSTRIAL, SERVICE               )
TRANSPORTATION, PROFESSIONAL AND         )
GOVERNMENT WORKERS OF NORTH              )
AMERICA,                                 )
                                         )
         Defendant.                      )
                                         )

ATTORNEYS:

**Lee J. Rohn, Esq.**
St. Croix, U.S.V.I.
     *For the plaintiff.*

**Ryan W. Greene, Esq.**
St. Croix, U.S.V.I.
     *For the plaintiff.*

**Pedro K. Williams, Esq.**
St. Thomas, U.S.V.I.
     *For the defendant.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the motion of United Industrial Service Transportation Professional and Government Workers of North America ("Union") to vacate the jury verdict and grant a new trial or in the alternative remittitur.

*Marrero v. Union*
Civil No. 2008-cv-92
Judgment
Page 2

## I. FACTUAL AND PROCEDURAL BACKGROUND

Because the Court writes primarily for the parties, whose familiarity with these proceedings is presumed, only a brief recitation of the factual and procedural background is required.

On June 17, 2008, Marrero filed this action against Darlan Brin, the Virgin Islands Port Authority ("VIPA"), and the Union.[1] Count one of the complaint alleged a Title VII violation under 42 U.S.C. § 2000e, et seq. against Brin, VIPA, and the Union. Count two alleged a violation of territorial civil rights statutes 10 V.I.C. § 61 et seq. and 24 V.I.C. § 451 et seq. against Brin, VIPA, and the Union. Count three alleged a breach of the duty of fair representation against the Union. Count four asserted intentional infliction of emotional distress, and alternatively, negligent infliction of emotional distress against Brin, VIPA, and the Union.[2] Count five sought punitive damages.

Thereafter, the Court dismissed Marrero's Title VII and territorial claims against Brin for failure to state a claim. (Mem. Op., Sept. 28, 2009, Docket No. 74; Order Sept. 28, 2009, Docket No. 73.) Marrero subsequently settled her claims with

---

[1] Marrero filed her initial complaint on June 17, 2008 against Brin and VIPA. She amended her complaint, adding the Union as a defendant, on August 26, 2008.

[2] On June 8, 2011, Marrero filed an informational notice stating that she would not pursue her claim for Negligent Infliction of Emotional distress. (Informational Notice, June 8, 2011, Docket No. 161).

VIPA. (Stip. of Dismissal, Jan. 26, 2010, Docket No. 85.). The remaining defendant was the Union.

Marrero's claims against the Union went to trial on June 14, 2011.  At the close of Marrero's case-in-chief the Union moved for a directed verdict.  The Court took the matters under advisement.  At the close of the case, the Union renewed its motion for a directed verdict.  The Court granted the Union's motion for a directed verdict as to Counts one and two.

Subsequently, the jury returned a verdict in favor of Marrero.  Specifically, the jury found that the Union breached its duty of fair representation.  It awarded Marrero $50,000 in non-economic damages and $150,000 in economic damages. The jury also found that the Union was not liable for intentional infliction of emotional distress.

The Union now moves for a new trial or in the alternative remittitur.

Marrero opposes.

## II. <u>DISCUSSION</u>

**A. Remittitur**

Notwithstanding the jury's award, a district court may, in the exercise of its discretion, use its remittitur power to reduce that award. *See Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 354 (3d Cir. 2001).  A trial court, in exercising such

*Marrero v. Union*
Civil No. 2008-cv-92
Judgment
Page 4

power, must "evaluate the evidence presented and determine whether or not the jury has come to a rationally based conclusion." *Spence v. Bd. of Educ. of the Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986); *see also Evans*, 273 F.3d at 354 ("[T]he issue to be decided here 'is not the size of the award alone, but the evidence supporting the award.'" (quoting *Blakey v. Continental Airlines, Inc.*, 992 F. Supp. 731, 737 (D.N.J. 1998)). In other words, "[a] remittitur is in order when a trial judge concludes that a jury verdict is 'clearly unsupported' by the evidence and exceeds the amount needed to make the plaintiff whole[.]" *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1100 (3d Cir. 1995) (citations omitted); *see also Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 178 (5th Cir. 1992) (explaining that a remittitur may be granted if a jury's award is "excessive or so large as to appear contrary to right reason"). A trial court may order remittitur *sua sponte*. *See Vadie v. Miss. State Univ.*, 218 F.3d 365, 378 (5th Cir. 2000) ("Although we note that MSU did not ask for remittitur when it sought judgment as a matter of law or, in the alternative, a new trial after the jury rendered its verdict, it would have been within the district court's discretion to *sua sponte* suggest remittitur."); *Cook v. Ross Island Sand & Gravel Co.*, 626 F.2d 746, 747 (9th Cir. 1980) (affirming the district

*Marrero v. Union*
Civil No. 2008-cv-92
Judgment
Page 5

court's judgment where it "issued *sua sponte* an order of remittitur").

**B. Fed. R. Civ. P. 59**

A motion for a new trial pursuant to Fed. R. Civ. P. 59 ("Rule 59") may be granted "on all or some of the issues— and to any party. . . ." Fed. R. Civ. P. 59 (a). There is no fixed standard for granting a new trial. Rather, the standard varies according to the grounds on which a new trial is sought. *Williams v. Rene*, 72 F.3d 1096, 1100 (3d Cir.1995); *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1992).

The district court's discretion to grant a new trial lies along a continumm. "[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991).

The district court's discretion is far broader "when reason for interfering with the jury verdict is a ruling on a matter that initially rested within the discretion of the court, e.g. evidentiary rulings . . . or prejudicial statements made by counsel." *Klein*, 992 F.2d at 1289-90.

### III. ANALYSIS

The Union argues that the Court should vacate the jury award and grant a new trial or in the alternative reduce it.

Here, the jury awarded Marrero $200,000 in compensatory damages. $150,000 of the $200,000 was for economic damages. The remainder, $50,000, was for emotional distress and suffering.

**A. Economic Damages**

The Union asserts that the jury's award of $150,000 in economic damages was unsupported by the evidence. It argues that the only damages Marrero sought at trial were attorney's fees she incurred in litigating her sexual harassment claim against VIPA. The Union asserts that Marrero cannot collect damages from the Union for attorney's fees she incurred in litigating her claim.

In *Ames v. Westinghouse*, 864 F.2d 289 (3d Cir. 1988), Philip Ames ("Ames") brought suit against his employer, Westinghouse Electric Corporation ("Westinghouse"), and his union, the International Union of Electrical Radio and Machine Workers (the "Union").

Ames was an employee at Westinghouse for twenty-three years. During that time, Ames's collective bargaining representative was the Union, which had a collective bargaining

agreement with Westinghouse. The agreement contained a grievance arbitration clause.

Ames asserted a grievance against Westinghouse. The Union did not prosecute the grievance for Ames. Rather, Ames incurred attorney's fees in pursuing his grievance. Ames filed a claim pursuant to section 301 of the Labor Management Relations Act ("LMRA") to recover his costs. The district court dismissed Ames's claim. Ames appealed that decision.

The Third Circuit remanded the case for the district court to determine whether the Union breached its duty of fair representation to Ames. The Court emphasized that "[i]f [the Union] did [breach its duty], his claim for damages caused by such breach, in the form of reasonable attorneys' fees, separate from the damages he may recover from Westinghouse, must be awarded unless there are other valid defenses." *Id.* at 294.

At trial, Marrero testified about the amount of attorney's fees and costs she incurred in pursuing her grievance.

> Q. Now as a result of the union not getting back to you, what did you decide to do?
> A. I decided to hire an attorney, private counsel.
> Q. And what did you want -- what did you hire that attorney to do?
>
> A. I hired that attorney to step in on my behalf -- to do what I wanted the union to do in the first place, to intercede on my behalf to stop the sexual discrimination, to stop all the injustices that were going on as a result of my -- you know, stopping Mr. Brin's advances towards me.

> . . .
>
> Q. And did you have to pay attorney's fees in order to do so?
>
> A. Yes, I did.
>
> . . .
>
> Q. And how much in attorney's fees did you have to pay?
>
> . . .
>
> THE WITNESS: About 60,000.
>
> Q. And did you have to pay expenses?
>
> A. Yes, I did.
>
> Q. And how much in expenses did you have to pay?
>
> A. About 25 -- 2,500.

(Trial Tr. 131-133, June 13, 2011).

The uncontroverted testimony at trial established that Marrero paid $60,000 in attorney's fees and $2,500 in litigation expenses. To the extent the jury's award of economic damages exceeded $62,500, as it did, such an amount is clearly excessive and unsupported by the evidence. Under these circumstances, the Court finds that remittitur is appropriate. *See generally Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 178 (5th Cir. 1992) ("A verdict is excessive as a matter of law if shown to exceed 'any rational appraisal or estimate of the damages that could be based upon the evidence before the jury.'" (quotation

omitted)), *cited* in *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1100 (3d Cir. 1995). Accordingly, the Court will enter judgment for $62,500 in economic damages.

### B. Non-Economic Damages

The Union further argues that the jury's award of $50,000 in non-economic damages was grossly excessive.

"A mainstay of the excessiveness determination [of jury awards] is comparison to awards for similar injuries." *Salinas v. O'Neill*, 286 F.3d 827 (5th Cir. 2002).

In *Lewallen v. City of Beaumont*, 394 Fed. Appx. 38 (5th Cir. 2010), Tina Lewallen ("Lewallen"), a female police officer, sued the City of Beaumont (the "City") after the City's police department failed to select her for the position of detective. She sued the City for, *inter alia*, sex discrimination, violations of the Equal Protection Clause of the Fourteenth Amendment, and violations of state law. The jury awarded Lewallen $50,000 in past compensatory damages and $25,000 in future compensatory damages. She received no award for economic damages. The City appealed the jury verdict.

In affirming the $50,000 in past compensatory damages, the Fifth Circuit stated, "'[w]e review with deference damage awards based on intangible harm, because the harm is subjective and

*Marrero v. Union*
Civil No. 2008-cv-92
Judgment
Page 10

evaluating it depends considerably on the demeanor of witnesses.'" *Id*. at *6.

In evaluating the award, the Fifth Circuit noted that, at trial, Lewallen testified that she suffered from severe migraine headaches "which lasted for up to three days and were so severe that they would cause vomiting." *Id.* She further testified that these migraines affected her ability to eat, move, and get out of bed. She also stated she suffered from insomnia. The Fifth Circuit held that Lewallen's testimony was sufficient to support the jury's award of $50,000 in past damages. *See also Bryant v. Aiken Regional Medical Centers Inc.*, 333 F.3d 536, 547 (4th Cir. 2003) (affirming jury award of $50,000 in compensatory damages for emotional distress where plaintiff testified that she suffered "'frequent headaches, insomnia, irregular menstrual cycles, nausea, [and] vomiting.'"); *Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.,* 130 F.3d 349, 358 (8th Cir. 1997) (reducing compensatory damage award for emotional distress from $150,000 to $50,000 where plaintiff testified he had headaches, symptoms of headaches, and his stomach hurt.); *Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir. 1989) (remanding to district court to reduce $250,000 damage award with instructions to not exceed $50,000 where the only evidence of mental anguish and distress was plaintiff's testimony that he was angry, depressed,

*Marrero v. Union*
Civil No. 2008-cv-92
Judgment
Page 11

scared, and frustrated.); *DeNieva v. Reyes*, 966 F.2d 480, 487 (9th Cir. 1992) (plaintiff testified to suffering emotional distress manifested by insomnia, dizziness, and vomiting and received $50,000).

In this case, Marrero testified that she experienced depression, weight gain, and headaches as a result of the Union's actions. At trial she testified,

> Q. Now, can you tell the jury, emotionally what happened to you when you couldn't get your union to represent you on your sexual discrimination claims?
>
> A. Emotionally, I became severely depressed. Every time I realized that I was on my own, without any representation from my union, I became depressed. I didn't want to go to work. I had headaches. I gained weight. I was just -- I was a wreck. I cried often. You know, I prayed sometimes, but nothing seemed to work.
> Q. Did you suffer any physical problems as a result of not getting your union to help you against Darlan Brin?
> A. Physical, I would say, probably, I guess the headaches, the tension headaches that I had all the time.
> Q. How often would you take them -- have them?
> A. Often. I mean, I had, I was always popping pills, headaches all the time.
> Q. Did you have any other physical problems?
> A. I suffered from stomach cramps. I mean, I was stressed out. I wasn't eating well. So I guess it all tied in to just being stressed out all the time.

(Trial Tr. at 133-134, June 13, 2011)

> Q. Okay. And you also testified as to what you were experiencing. But during that period of time you never visited any doctors, am I correct?
> A. For what? The problems I was having?
> Q. Yes.
> A. Yes, I did.

> Q. Which doctors did you see?
> A. I saw a doctor for my headaches.
> Q. Okay. You never testified to that in deposition, am I correct?
> A. I can't recall. But I know I did see a doctor for my -- the headaches I was getting all the time.
> Q. What doctor did you see?
> A. She was at the clinic. I can't remember her name. She was a Caucasian lady. I think she had locks.
> Q. And how many times did you see her?
> A. I saw her one time, and she told me that I should get a CAT scan for my head. And I couldn't afford that at the time, so I never went.
> Q. Okay. And -- now, did the union ever engage in any sexual harassment activities towards you?
> A. The union did not do it. But they didn't stop it.

(Trial Tr. 150-151, June 13, 2011).

The Union asserts that Marrero failed to produce "concrete" evidence demonstrating her emotional distress.

"Compensatory damages that may be awarded without proof of pecuniary loss include compensation (a) for bodily harm, and (b) for emotional distress." Restatement (Second) of Torts § 905 (1979). Courts have accepted a plaintiff's testimony as evidence entitling the plaintiff to compensatory damages. *See Tortu v. Las Vegas Metropolitan Police Dept.*, 556 F.3d 1075 (9th Cir. 2009) ("[C]ompensatory damages may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms."); *Williams v. Trader Publ'g Co.*, 218 F.3d 481 (5th Cir. 2000) (stating that testimony of a plaintiff alone may be

enough for compensatory damages for emotional distress.) in compensatory damages.); *Hitt v. Connell*, 301 F.3d 240, 250-51 (5th Cir. 2002) ("To meet [the] burden [of proving compensatory damages for mental anguish], a plaintiff is not absolutely required to submit corroborating testimony. . . The plaintiff's own testimony, standing alone, may be sufficient."). Based on the foregoing, Marrero's trial testimony was sufficient evidence of non-economic damages.

Accordingly, the Court will not disturb the jury's non-economic damages award.

### C. New Trial

The Union argues that a new trial is required because the jury's verdict is unsupported by the evidence. The Court disagrees.

"A new trial should be granted only where the 'great weight' of the evidence cuts against the verdict and 'where a miscarriage of justice would result if the verdict were to stand.'" *Springer v. Henry*, 435 F.3d 268 (3d Cir. 2006) (quoting *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1076 (3d Cir. 1996)).

As the Court has previously addressed, Marrero's claims for economic and non-economic damages were supported by trial

testimony. Accordingly, the Court will not grant a new trial on this basis.

The Union also contends that the Court should grant a new trial because it is impossible to ascertain Marrero's damages. The Union states that as a consequence of Marrero's settlement agreement with VIPA it is impossible for a judge or jury to ascertain damages attributable to the Union. The Court notes that it is not necessary to delve into the particulars of the settlement agreement to determine the amount of attorney's fees Marrero expended in litigating her case against VIPA.

Indeed, courts have held that where a plaintiff brings suit under section 301 against his employer and his union, and thereafter, settles with the employer, the plaintiff may recover costs from the union for pursuing his claim against the employer. *See, e.g., Vencl v. International Union of Operating Engineers, Local 18*, 137 F.3d 420, 427 (6th Cir. 1998) (stating that employee's settlement with the employer did not preclude him from recovering costs from the Union incurred in pursuing his claims against his employer).

Further, the damages may be ascertained by evidence produced at trial. Here, Marrero testified that she incurred $62,500 in litigating her sexual harassment claims against her employer. Accordingly, consistent with *Ames*, Marrero is

*Marrero v. Union*
Civil No. 2008-cv-92
Judgment
Page 15

entitled to attorney's fees she expended in pursuit of her sexual harassment claims against VIPA.

Based on the foregoing, the Court will deny the Union's motion for a new trial.

### IV. <u>CONCLUSION</u>

The Court will grant the Union's motion for remittitur in part. The Court will deny the Union's motion for a new trial. An appropriate judgment follows.

```
                                    S/_____
                                      CURTIS V. GÓMEZ
                                         Chief Judge
```